**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HUMAN GENOME SCIENCES, INC., | : | |
| Plaintiff, | : | |
| v. | : C.A. No. 11-082-LPS | |
| GENENTECH, INC. and CITY OF HOPE, | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| HUMAN GENOME SCIENCES, INC., | : | |
| Plaintiff, | : | |
| v. | : C.A. No. 11-156-LPS | |
| GENENTECH, INC., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| HUMAN GENOME SCIENCES, INC., | : | |
| Plaintiff, | : | |
| v. | : C.A. No. 11-328-LPS | |
| GENENTECH, INC. and CITY OF HOPE, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Adam W. Poff, Esquire and Monté T. Squire, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.
Henry B. Gutman, Esquire, Aimee H. Goldstein, Esquire, and Noah M. Leibowitz, Esquire of SIMPSON THATCHER & BARTLETT LLP, New York, NY.
Harrison J. Frahn IV, Esquire of SIMPSON THACHER & BARTLETT LLP, Palo Alto, CA.
Arman Y. Oruc, Esquire of SIMPSON THACHER & BARTLETT LLP, Washington, D.C.

     Attorneys for Plaintiff.

Philip A. Rovner, Esquire and Jonathan A. Choa, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.
Daralyn Durie, Esquire, Ragesh K. Tangri, Esquire, Joshua H. Lerner, Esquire, and Genevieve Rosloff, Esquire of DURIE TANGRI LLP, San Francisco, CA.
Kenneth A. Gallo, Esquire and Craig A. Benson, Esquire of PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, D.C.

     Attorneys for Defendant Genentech, Inc.

Philip A. Rovner, Esquire and Jonathan A. Choa, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.
Daralyn Durie, Esquire, Ragesh K. Tangri, Esquire, Joshua H. Lerner, Esquire, and Genevieve Rosloff, Esquire of DURIE TANGRI LLP, San Francisco, CA.
Kenneth A. Gallo, Esquire and Craig A. Benson, Esquire of PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, D.C.
Daniel M. Wall, Esquire of LATHAM & WATKINS LLP, San Francisco, CA.

     Attorneys for Defendant City of Hope.

July 18, 2011
Wilmington, Delaware

**STARK, U.S. District Judge:**

Three lawsuits are pending before the Court in which Human Genome Sciences, Inc. ("HGS") asserts declaratory judgment, antitrust, Lanham Act, and state tort claims against Genentech, Inc. ("Genentech") and City of Hope ("COH") (together, "Defendants") based on two patents co-owned by Defendants: U.S. Patent No. 6,331,415 (the "Cabilly II patent") and U.S. Patent No. 7,923,221 (the "Cabilly III patent") (collectively, "the patents-in-suit"). *See* 11-cv-082-LPS; 11-cv-156-LPS; 11-cv-328-LPS. Presently before the Court are Defendants' motions to transfer venue to the Central District of California (the "Central District"), brought pursuant to 28 U.S.C. § 1404(a). (11-cv-082-LPS D.I. 10; 11-cv-156-LPS D.I. 8; 11-cv-328-LPS D.I. 5)[1] Also pending before the Court are: Defendants' motion to stay Civil Action No. 11-cv-082-LPS or dismiss pursuant to Rules 12(b)(2), (3), and (7) (D.I. 10); HGS's motion for leave to supplement the complaint in Civil Action No. 11-cv-082-LPS (D.I. 36); Genentech's motion to stay Civil Action No. 11-cv-156-LPS or dismiss that action pursuant to Rule 12(b)(6) (11-cv-156-LPS D.I. 5); Genentech's motion to consolidate Civil Action No. 11-cv-156-LPS with Civil Action No. 11-cv-082-LPS (11-cv-156-LPS D.I. 8); and Defendants' motion to stay Civil Action No. 11-cv-328-LPS or dismiss that action pursuant to Rules 12(b)(2), (3), and (7) (11-cv-328-LPS D.I. 5). The Court held a hearing on the pending motions on May 18, 2011. *See* Mot. Hr'g Tr., May 18, 2011 (D.I. 43) (hereinafter "Tr."). For the reasons set forth below, Defendants' motions to transfer venue are GRANTED and the remaining motions are DENIED without prejudice to renew in the Central District.

---

[1] Unless otherwise noted, all record citations hereinafter refer to docket items in 11-cv-82-LPS.

**The Parties**

HGS is a corporation organized under the laws of Delaware. (D.I. 1 ¶ 7) HGS's principal place of business is Rockville, Maryland. (*Id.*)

Genentech is a corporation organized under the laws of Delaware. (*Id.* ¶ 8) Genentech's principal place of business is San Francisco, California. (*Id.*) COH is a not-for-profit organization formed under the laws of California. (*Id.* at ¶ 9) COH's principal place of business is Duarte, California. Genentech and COH jointly own the patents-in-suit, but COH has granted Genentech an exclusive license to patents which it owns or controls in return for royalty payments. (*See* D.I. 15, Ex. F ¶¶ 1.07, 4.01) The Cabilly II patent has generated millions of dollars in royalty revenues. In 2007 and 2008, the royalty revenue was $256 million and $298 million respectively, of which COH's share was $50 million and $61 million. (D.I. 20, Ex. B at 52)

The Cabilly II patent has been involved in numerous lawsuits, all of which (other than the instant cases) were brought or transferred to the Central District. The first suit was brought by Defendants' licensee MedImmune Inc. and was dismissed in June of 2008. *See MedImmune Inc. v. Genentech, Inc.*, 2:023-cv-2567 MRP (C.D. Cal). The second was a declaratory judgment suit brought by Centocor, Inc. *See Centocor Inc. v. Genentech*, Inc., 2:08-cv-3573 MRP (C.D. Cal). The third is a declaratory judgment action brought by Glaxo Group Ltd. in the Northern District of California, which was subsequently transferred to the Central District. *See Glaxo Group Ltd. v. Genentech, Inc.*, 3:10-cv-675 JSW (N.D. Cal); *Glaxo Group Ltd. v. Genentech, Inc.*, 2:10-cv-2764 MRP (C.D. Cal.).

The Cabilly III patent is the subject of a lawsuit brought by Defendants and currently

pending in the Central District as well. *Genentech, Inc. and City of Hope v. Glaxo Group Ltd. et al.*, 2:11-cv-3065 MRP (C.D. Cal). Among the parties named as Defendants in the Central District's Cabilly III patent case is HGS, the Plaintiff in the instant action.

## Section 1404(a)

Defendants' requests to transfer arise under 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Specifically, Defendants jointly ask that the Court transfer the three pending actions to the Central District.

## Applicable Legal Standards

Section 1404(a), as the Third Circuit has explained, "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) ("Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice."). The Third Circuit has also emphasized that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879. As a result, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted).

Consequently, the burden rests squarely on the party seeking a transfer "to establish that a

3

balancing of proper interests weighs in favor of the transfer." *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted) (emphasis in original); *see also CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567-68 (D. Del. 2001). It follows that "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010) (internal citations omitted); *see also Illumina, Inc. v. Complete Genomics, Inc.*, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010).

Unless the defendant "is truly regional in character" – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is almost always inappropriate. *See Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004). When transfer is sought by a defendant with operations on a national or international scale, that defendant "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations." *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted); *see also In re TCW/Camil Holding, L.L.C.*, 2004 WL 1043193, at *1 (D. Del. Apr. 30, 2004).[2]

---

[2]*See generally Intel v. Broadcom*:

> [Defendant] is a multi-billion dollar company that does business on an international scale. Furthermore, the conveniences of modern travel and communication technology have made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses. Therefore, to meet its burden [defendant] must establish that litigating this case in Delaware will pose a unique or unusual burden on [its] business operations. It has not done so.

"A motion to transfer may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties." *Praxair*, 2004 WL 883395, at *1; *see also Mallinckrodt Inc. v. E-Z-Em, Inc.*, 670 F. Supp. 2d 349, 357-58 (D. Del. 2009) ("In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the interests of justice.").

Given the necessarily individualized, fact-specific, case-by-case nature of a decision whether to transfer venue, it is inevitable that the multitude of transfer opinions – including the many issued in this District – will not entirely harmonize with one another. As Chief Judge Sleet has explained:

> By definition, a transfer analysis is a thoughtful weighing of interests. And, as an exercise of discretion, this process is, at least to some extent, subjective.
>
> ·Thus, while the Court can look to precedent for guidance, it reminds the parties that the weight which one court might afford to one factor on one day might very well differ from the weight afforded to that same factor by a different court, located in a different district, presiding over a different litigation, between different parties, concerning a different cause of action, involving different facts, different witnesses, and different documents on a different day.

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998). It bears emphasis that such differences may also be evident even among different judges sitting in the same District.

**Appropriateness of the Transferee Venue**

---

167 F. Supp. 2d 692, 706 (D. Del. 2001) (internal quotation marks and citations omitted).

In determining whether transfer is appropriate, the Court must first determine whether this action could have been brought in the proposed transferee venue, which here is the Central District. "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance." *Mallinckrodt*, 670 F. Supp. 2d at 356 (internal citations omitted). Since Genentech and COH concede to personal jurisdiction in the Central District, their place of residence, *see* 28 U.S.C. § 1391(c); *see also* D.I. 11 at 16, HGS could have brought these actions in the transferee district.

HGS, however, contends that these actions could not have been brought in the Central District because that court would lack personal jurisdiction over HGS. The Court is unpersuaded. As the plaintiff, HGS had the option to sue Defendants in the Central District, as there is personal jurisdiction over Defendants there. (*See* D.I. 11 at 16) This is so even assuming the Central District lacks personal jurisdiction over HGS. *See Shutte*, 431 F.2d at 24 (stating that for transfer to be "authorized by the statute," "venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over *all of the defendants*") (emphasis added); *see also In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint."); *F.T.C. v. Watson Pharm., Inc.*, 611 F. Supp.2d 1081, 1090 (C.D. Cal. 2009) ("However, the inquiry into due process asks if the transferee court has jurisdiction over the defendants, not the plaintiffs.") (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3845 (3d ed. 2007)). HGS would have conceded to

6

personal jurisdiction in the Central District by filing suit there. *See Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) ("The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff.").

Based on three district court cases, HGS proclaims it is "the hornbook law in this circuit" that transfer is authorized only when the transferee court can exercise personal jurisdiction over the plaintiff. (D.I. 16 at 14) The Court does not discern within these cases the support HGS finds for its position. Moreover, as district court decisions, none of HGS's cases are binding on this Court.

In none of the three cases on which HGS relies was transfer denied because the transferee court lacked personal jurisdiction over the plaintiff. *See Tahir v. Avis Budget Grp., Inc.*, 2009 WL 4911941, at *3 (D.N.J. Dec. 14, 2009) (finding that action could have been brought in transferee district, but transfer was nonetheless improper given balance of private and public interests); *Bachmann Software & Servs. v. Intouch Grp., Inc.*, 2008 WL 2875680, at *13-17 (D.N.J. July 22, 2008) (same); *Betz Labs., Inc. v. Cameron*, 1997 WL 164234, at *1-2 (E.D. Pa. Mar. 31, 1997) (granting motion to transfer). In fact, in two of the three cases this issue was not before the Court; in the third case, the court assessed personal jurisdiction over the plaintiff in the transferee district without indicating if it was contested. *See Tahir*, 2009 WL 4911941, at *3 ("[N]o party has raised an objection to the transfer based on lack of jurisdiction in the proposed transferee district. In any event, it appears to this Court from the information available to it that

7

all parties would be subject to personal jurisdiction in Virginia."); *Bachmann*, 2008 WL 2875680, at *13 (assessing and finding personal jurisdiction over plaintiff with no indication if contested, but ultimately denying transfer); *Betz Labs.*, 1997 WL 164234, at *1 ("[The plaintiff] does not dispute that this action 'might have been brought' in the Northern District of Illinois. Indeed, it seems that both venue and personal jurisdiction over all the parties could readily be established in that district.").

Additionally, two of HGS's cases cite *Shutte*, 431 F.2d at 22, when stating that a transferee court must have personal jurisdiction over "all the parties;" the third makes a similar assertion without citation. *See Tahir*, 2009 WL 4911941, at *3 (citing *Shutte*); *Bachmann*, 2008 WL 2875680, at *12 (citing *Shutte*); *Betz Labs.*, 1997 WL 164234, at *1 (stating "it seems that both venue and personal jurisdiction over all the parties could readily be established," with no citation). But in *Shutte* the Third Circuit stated:

> [A] transfer is authorized by the statute only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; i.e., venue must have been proper in the transferee district and ***the transferee court must have had power to command jurisdiction over all of the defendants***. . . . Prior to ordering a transfer the district court must make a determination that the suit could have been rightly started in the transferee district. . . . If there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum, . . . it is evident that he would not have an unqualified right to bring his cause in the transferee forum.

431 F.2d at 24 (emphasis added; internal citations omitted). *Shutte* does not require an assessment of personal jurisdiction over the plaintiff in the transferee district.

HGS also reads *Infineon Technologies AG v. Fairchild Semiconductor International, Inc.*,

2009 WL 3150986 (D. Del. Sept. 30, 2009), to support its contention. In *Infineon*, this Court was confronted with a motion for leave to amend a complaint. The plaintiff, Infineon, sought to add to an already pending patent infringement action in Delaware (the "Delaware Action") two declaratory judgment claims relating to patents that were concurrently being asserted by the defendant, Fairchild, in a patent infringement action pending in Maine (the "Maine Action"). After analyzing the motion under the applicable standards of Federal Rule of Civil Procedure 15, the Court also addressed the factors that would be applicable to a § 1404 transfer analysis. In this context, the Court observed: "Because Maine may not have jurisdiction over Infineon, and Fairchild has already conceded this District's jurisdiction over it, Delaware may be the only available forum anyway." 2009 WL 3150986, at *7. But Court was considering a motion for leave to amend subject to Rule 15 only, not a motion to transfer venue under § 1404(a). Although the Court contemplated whether its conclusion would be the same if viewed through the prism of a motion to transfer venue, the Court only had before it a motion for leave to amend, so the Court was not deciding whether Maine had personal jurisdiction over Infineon, nor whether such a determination would be necessary if a motion to transfer had been pending. The issue plainly was not before the Court and the Court was not opining on its resolution.

Finally, Plaintiff's contention that, because this is a declaratory judgment action, it should be considered the defendant for purposes of the jurisdictional analysis (D.I. 16 at 14-15; Tr. at 14) is also unpersuasive. As a declaratory judgement plaintiff, HGS chose to initiate this lawsuit and is subject to whatever course the action takes. More importantly, Plaintiff's argument that it is truly the defendant here would, if accepted, undermine its position on application of the *Jumara* factors (see below), as the Court would then have to give primary weight to the choice of

forum of Defendants (i.e., the Central District), as they would be viewed as the "true plaintiffs" here.

**The *Jumara* Factors**

Since two proper venues have been identified, the Court must balance the appropriate considerations and determine whether, under the particular facts of this case, the request to transfer venue should be granted. The Third Circuit has observed that in undertaking such an analysis "there is no definitive formula or list of the factors to consider." *Jumara*, 55 F.3d at 879. Instead, courts must analyze "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.*

Nevertheless, the Third Circuit has also identified a set of private interest and public interest factors for courts to consider. *See id.* at 879-80. The private factors to consider include: (1) "the plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." The public interest factors to consider include: (1) "the enforceablity of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" and (5) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

10

(internal citations omitted)

Below, the Court considers and weighs each of these public and private interest factors, to the extent relevant in the particular circumstances presented here.

## Private Interest Factors

### Plaintiff's choice of forum

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte,* 431 F.2d at 25 (internal citations and quotations omitted). That is, "courts normally defer to a plaintiff's choice of forum . . . ." *Jumara,* 55 F.3d at 880. Indeed, "[t]he deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,* 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted).

HGS has clearly manifested its preference for Delaware as a forum by filing suit in this jurisdiction and this choice is entitled to deference. Although HGS is incorporated in Delaware, its principal place of business is in Maryland; arguably, then, Delaware is not its "home turf." But HGS's choice of forum still deserves significant weight. *See Mallinckrodt,* 670 F. Supp. 2d at 356 ("Defendants contend that Plaintiffs' choice of forum is due little weight because Delaware is not its 'home turf.' . . . However, Plaintiffs' decision to litigate in Delaware is still accorded significant deference because Plaintiffs' choice of Delaware as a forum relates to their legitimate, rational concerns as Delaware corporations.") (internal citations omitted); *Angiodynamics,* 2010 WL 3037478, at *2 (same).

11

### Defendants' forum preference

Defendants prefer an alternative forum: the Central District. Both Defendants maintain their principal place of business in California, although Genentech is a Delaware corporation. (D.I. 1 at ¶¶ 8, 9)

### Location of operative events

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). As a declaratory judgment plaintiff, HGS's claim arguably arose in this District since any injury resulting from Defendants asserting their patent rights would be felt here in Delaware, where HGS is located as a result of being formed here. *See Millipore Corp. v. Univ. Patents, Inc.*, 682 F. Supp. 227, 234 (D. Del. 1987) ("A declaratory judgment action seeking to invalidate a patent arises where the alleged infringer is located, receives the damaging charges of infringement, or suffers economic injury as a result of the charges.") (internal quotations omitted).

### Convenience of the parties

The next factor to be considered is "the convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879.

The record contains little information about the physical and financial conditions of the parties, although some figures regarding Defendants' royalty income are of record, as is COH's non-profit status. (*See* D.I. 20, Ex. B at 52; D.I. 1 at ¶ 9) Plaintiff HGS and Defendant Genentech are both large for-profit entities. Defendants argue that Defendant COH's non-profit status makes litigating away from California particularly inconvenient, although Defendants also

concede that "the convenience of the parties appears to be a wash." (D.I. 11 at 18)

As a practical matter, most of the discovery process will take place in California, in the offices of the parties' attorneys and in the areas where the parties maintain their documents, regardless of where the litigation proceeds. *See Cypress Semiconductor Corp.*, 2001 WL 1617186, at *4 ("[C]onvenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in California regardless of the trial venue."). The only events likely to occur in Delaware are the claim construction hearing, any hearing on motions (but not discovery motions, as this Court almost exclusively addresses such disputes by teleconference), the pretrial conference, and trial. A trial (if this case even gets to trial) is likely to last two weeks at most – and, even during trial, the presence of key witnesses in Delaware is very unlikely to be required any longer than a week.

Additionally, the Court also takes notice of the widespread prevalence of laptop, notebook, and tablet computers; high-speed internet connections; smartphones; and the relative availability of video conferencing technologies. All of this technology makes it far easier today for a traveling employee to "keep in touch" with the "home office" and reduce the disruptions to her work.

As importantly, the Court emphasizes that Genentech chose to incorporate in Delaware. "[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware." *Mallinckrodt,* 670 F. Supp. 2d at 357; *see also Praxair,* 2004 WL 883395, at *2 ("By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware."). "[A]s the judges of this court

13

have noted, one aspect of a company's decision to incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit itself to the jurisdiction of the courts in this state for the purposes of resolving this type of commercial dispute." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001). Thus, "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *Id.* at 573.

### Convenience for the witnesses

The next factor is "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "[I]n reviewing a motion to transfer, courts frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *ADE Corp.*, 138 F. Supp. 2d at 569; *see also id.* at 574 ("The court does have an interest in seeing that a plaintiff's choice of a forum does not deprive a defendant of its ability to put on a defense that effectively communicates the matters in issue to the judge and the jury.").

The Court agrees with Chief Judge Sleet, who held that the weight to be accorded to concerns about convenience for the witnesses varies depending on the type of witness at issue:

> Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they are usually selected [on the basis] of their reputation and special knowledge without regard to

14

their residences and are presumably well compensated for their
attendance, labor and inconvenience, if any. Fact witnesses who
possess first-hand knowledge of the events giving rise to the
lawsuit, however, have traditionally weighed quite heavily in the
"balance of convenience" analysis.

*Affymetrix*, 28 F. Supp.2d at 203 (internal citations and quotation marks omitted). With respect

to the last category – fact witnesses with first-hand knowledge – the Court should be particularly

concerned not to countenance undue inconvenience to third-party witnesses, who have no direct

connection to the litigation. *See generally id.* (explaining that non-party fact witnesses weigh

heavily in analysis); *see also Headon v. Colo. Boys Ranch*, 2005 WL 1126962, at *7 (E.D. Pa.

May 5, 2005) (noting that convenience of non-party witnesses is "perhaps the most important

factor"); 8 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and

Procedure*, § 3851 (3d ed. 2008) ("Often cited as the most important factor in passing on a

motion to transfer under Section 1404(a) of Title 28 of the United States Code, and the one most

frequently mentioned by the courts, . . . is the convenience of witnesses, most particularly

nonparty witnesses who are important to the resolution of the case.").

Here, the record reveals that potential witnesses are scattered around the world (e.g., Los

Angeles, northern California, Pennsylvania, Oregon, and Israel). If this case turns out to be one

of the statistically rare cases to go to trial, it is always possible, if not likely, that third-party fact

witnesses with material, non-cumulative evidence will voluntarily appear at trial. *See ADE

Corp.*, 138 F. Supp. 2d at 570 ("Previous decisions in this court have suggested that the better

approach is to recognize that witnesses have and will appear here without having to be

15

subpoenaed.").[3] If not, then at least a deposition may be compelled by a court with jurisdiction over the recalcitrant witness, and that deposition may be used at trial. While deposition testimony is not a complete substitute for live trial testimony, *see In re DVI Inc.*, 2004 WL 1498593, at \*2 (D. Del. June 23, 2004) ("[T]he Court notes that it has previously rejected the argument made by Plaintiff that deposition testimony may serve as an adequate substitute for material non-party witnesses that a party is unable to procure for trial."), it is a fallback that in almost all instances will prevent a miscarriage of justice. Moreover, both sides bear some risk that this case will go to trial and that a crucial witness will be outside of this Court's subpoena power and refuse to appear at trial. This factor, then, does not weigh heavily in the transfer analysis in this case.[4]

**Location of relevant evidence**

Next the Court considers "the location of books and records (similarly limited to the

---

[3] *But see Nilssen v. Everbrite, Inc.*, 2001 WL 34368396, at \*2 (D. Del. Feb. 16, 2001) ("A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power.").

[4] The Court recognizes that there are decisions from this District that accord this factor much greater weight. *See, e.g., In re DVI, Inc.*, 2004 WL 1498593, at \*2 ("[T]he Court concludes that the presence of . . . witnesses . . . [who] reside outside of the subpoena power of the Court, weighs heavily in favor of transferring this action."); *Angiodynamics,* 2010 WL 3037478, at \*3 (holding lack of subpoena power over five former employees favored transfer); *Affymetrix,* 28 F. Supp. 2d at 204 (stating that interests of witnesses who were residents of California, and thus outside scope of this Court's subpoena power, "weigh heavily in favor of transfer"). On the other hand, as the Federal Circuit recently stated, in affirming this Court's denial of a motion to transfer a patent infringement action, "The district court also pointed out that the convenience of the witnesses did not favor either forum, because most of the witnesses were employees of or consultants to the parties and could therefore be encouraged to testify in either forum, even if they could not be compelled to testify in Delaware. This was correct . . . ." *Micron Tech., Inc. v. Rambus Inc.*, 2011 WL 1815975, at \*18 (Fed. Cir. May 13, 2011).

extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. The Federal Circuit has recently observed: "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also* Tr. at 6. Nevertheless, as this Court has repeatedly recognized, "recent technological advances have reduced the weight of this factor to virtually nothing." *Affymetrix*, 28 F. Supp. 2d at 208; *see also Nihon Tsushin Kabushkiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 373 (D. Del. 2009) (same). In particular, "[w]ith new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles." *ADE Corp.*, 138 F. Supp. 2d at 571; *see also Cypress Semiconductor*, 2001 WL 1617186, at *3 ("Advances in technology have significantly lessened the burden of litigating in a distant district. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another.") (internal citations and quotations omitted). Defendants do not claim it would be difficult to produce evidence in Delaware, although they complain about having to produce documents in two districts.

**Public Interest Factors**

### Enforceability of judgment

There is no suggestion that a judgment would be unenforceable in either District.

17

**Practical considerations**

The Court also takes account of "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.

The cases that have been or are being litigated in the Central District have given the presiding judge there, U.S. District Judge Mariana R. Pfaelzer, an extensive nine-year-long experience with the Cabilly II patent. Judge Pfaelzer has presided over four litigations centered around the Cabilly patents, two of which are still pending. (*See* Tr. at 7) Some of these actions involve some of the same parties, the same accused product (i.e., Benlysta), and same patents (i.e., the Cabilly II and III patents) as are involved in the cases pending here, and all of the Central District cases involve technologies, products, and a field of prior art that are at least similar to those involved in the cases pending here. Although two of the prior cases in front of Judge Pfaelzer settled before she addressed the merits, among the four actions she has issued three claim construction orders, heard fourteen summary judgment motions, presided over nine hearings, issued twenty-five substantive orders, and reviewed over 800 docket entries. She considers herself "a student of Cabilly II," being very familiar with the prosecution history, including the interference and reexamination record. (D.I. 15 Ex. A at 4) Although Judge Pfaelzer denied a motion to "add Benlysta to [her] case," she did state that she "would be prepared to take the Benlysta case," although "that's up to the other judge." (D.I. 25 Ex. A at 77) Judge Pfaelzer went as far as to say, "I would certainly be happy to take that [the Benlysta] case." (*Id.* at 79) Judge Pfaelzer seems to have denied the motion to add HGS in her case to afford this Court the opportunity to resolve the present transfer motions. (*See id.* at 82) ("You can do whatever you do in Delaware. I'm prepared to take that. If the judge agrees, we could expedite

18

it, but I'm not going to add another product to this case until that judge has a chance to look at the problem.").

Accordingly, the Court finds the practical considerations – and most especially that Judge Pfaelzer has almost a decade of experience with the Cabilly II patent and is willing to preside over the instant actions, in addition to the related actions already pending before her – weigh heavily in favor of transfer.

### Administrative difficulties in getting case to trial

The Court next turns to the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Notwithstanding the heavy caseload carried by the judges in this District, and the ongoing judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer. *See Textron Innovations, Inc. v. The Toro Co.*, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer."). Instead, this factor is neutral.

### Local interests in dispute

Both venues have a local interest in deciding the controversy. Delaware has an interest in adjudicating disputes involving companies incorporated in Delaware (HGS and Genentech), and the Central District has an interest in deciding disputes involving companies formed (COH) and headquartered in California (COH and Genentech).

Delaware's interests are substantial and must be accorded at least equal weight to those of the Central District. *See, e.g., Autodesk Can. v. Assimilate, Inc*, 2009 WL 3151026, at *9 ("D. Del. Sep. 29, 2009) ("Delaware clearly has a substantial interest in addressing lawsuits brought

19

against Delaware corporations."); *Mallinckrodt*, 670 F. Supp. at 357 (same). Moreover, the local interest factor is typically neutral, "because patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008); *see also In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."); *Praxair*, 2004 WL 883395, at *2 ("Patent cases are explicitly federal issues and the rights determined thereunder are national in scope."). Thus, the local interest factor is neutral.

### Public policy

The parties do not raise public policy concerns regarding transfer in these cases.

### Judges' familiarity with state law in diversity cases

This is not a diversity case. Instead, as the Federal Circuit has observed, "[p]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal quotation marks omitted).

### Conclusion

Overall, the following interests weigh against transfer: Plaintiff's choice of forum and the location of the operative events. The following interests weigh in favor of transfer: Defendants's choice of forum and practical considerations. Other factors, such as convenience of the parties and witnesses, location of evidence, administrative difficulties, and local interests are neutral.

20

At bottom, the analysis here turns on a balance between the weight due to the HGS's choice of forum and the practical consideration of Judge Pfaelzer's experience with the Cabilly II patent and willingness to preside over these litigations. The Court concludes that, in the circumstances presented here, the latter factor should be accorded heavy, indeed decisive, weight. *See Praxair*, 2004 WL 883395, at *1 ("A motion to transfer may also be granted if there is a related case which has been first filed *or otherwise is the more appropriate vehicle to litigate the issues between the parties*.") (emphasis added); *see also Mallinckrodt*, 670 F. Supp. 2d at 357-58 ("In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the interests of justice."). Accordingly, the Court will exercise its discretion and grant Defendants' motions to transfer. An appropriate Order follows.